Lawrence Lester TORRENCE,
Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000586–MR.

Supreme Court of Kentucky.

Oct. 23, 2008.

Ordered to be Published Dec. 4, 2008.

Kathleen Kallaher Schmidt, Appeals Branch Manager, Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

## MEMORANDUM OPINION OF THE COURT

A jury found Lawrence Torrence guilty of rape in the first degree and sodomy in the first degree and recommended a cumulative forty-year sentence. After the trial judge sentenced him in accordance with the jury's recommendation, Torrence filed this matter-of-right appeal.[1]

1. Ky. Const. § 110(2)(b).

## I. FACTS AND PROCEDURAL HISTORY.

Torrence's appeal raises three issues related to the trial of his case that he argues require reversal of his convictions. First, he contends that the Commonwealth engaged in prosecutorial misconduct when it called him an "admitted felon" during its closing argument in the guilt phase. Second, he contends that his due process rights were violated when the Commonwealth was permitted to introduce evidence in the penalty phase of the trial of his HIV-positive status. Finally, he contends that the trial court erred by permitting a nurse to testify that Torrence's alleged victim, K.K., told the nurse that she had bled from her nose. We find no reversible error in any of Torrence's arguments.

After a night of revelry and drinking with Torrence and others, K.K. claimed Torrence raped and sodomized her. Upon his arrest, Torrence apparently denied having any sexual contact with K.K. But he later changed his version of the events and admitted having sex with K.K., claiming their sexual encounter was consensual. At trial, the jury apparently believed K.K.'s version of events because it found Torrence guilty of first-degree rape and first-degree sodomy and recommended that Torrence serve the maximum allowable penalty—twenty years' imprisonment for each offense, to be served consecutively.

## II. ANALYSIS.

A. *No Reversible Error in the Commonwealth's Closing Argument.*

Despite the trial court's earlier ruling that the Commonwealth could not make reference to Torrence's 1985 conviction for attempted rape, the Common-

wealth's Attorney referred to Torrence as an "admitted felon, crack cocaine smoker" during its closing argument. When Torrence's counsel objected and moved for a mistrial, the Commonwealth's Attorney stated that he only meant that Torrence was an admitted felon because he had admitted to smoking crack cocaine—a felony offense. The trial court denied Torrence's motion for a mistrial, after which Torrence requested that the prosecution clarify its comments to the jury. Torrence's counsel stated that she would again object if she was not satisfied with the prosecutor's clarification. At the conclusion of the bench conference, the Commonwealth's Attorney attempted to clarify to the jury that the reference to Torrence being a felon referred to his crack cocaine usage. The Commonwealth's Attorney soon concluded its argument, after which Torrence's counsel objected again to the felony reference and requested the trial court to admonish the jury. The trial court complied with the defense counsel's request, admonishing the jury that the felony referred to by the Commonwealth should not be considered as indicative of any past event as there was no evidence about past felonious events and that the arguments of counsel were not evidence. After the admonition by the court, Torrence's counsel did not request additional relief. On appeal, Torrence contends that the Commonwealth's reference to his being a felon constitutes prosecutorial misconduct. We disagree.

Obviously, since the trial court had ruled that Torrence's previous felony conviction was to be excluded from evidence, the Commonwealth should not have mentioned it in its closing argument. Furthermore, even though possessing cocaine is a criminal offense, Torrence had not been charged or convicted of any cocaine offense. So it is clear that the Commonwealth improperly labeled Torrence as a felon before the jury. The question becomes whether that error is harmless.[2] Because we find that there is no reasonable possibility that the error contributed to the jury's verdict, we conclude that the reference to Torrence as a felon was a harmless error.[3]

 As we have written many times, our focus in claims of prosecutorial misconduct is on whether the trial as a whole was fair.[4] Thus, "[i]n any consideration of alleged prosecutorial misconduct, particularly, as here, when the conduct occurred during closing argument, we must determine whether the conduct was of such an 'egregious' nature as to deny the accused his constitutional right of due process of law." [5]

The Commonwealth's errant comment was not so egregious as to undermine the basic fairness of the entire trial. That conclusion is reinforced by the fact that the Commonwealth attempted to explain the reference to Torrence being a felon to the jury and, more importantly, the trial court admonished the jury not to consider the comment about Torrence being a felon

2. Kentucky Rules of Criminal Procedure (RCr) 9.24 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.").

3. *Anderson v. Commonwealth*, 231 S.W.3d 117, 122 (Ky.2007) (holding that an error is harmless "if there is no reasonable possibility that it contributed to the conviction.").

4. *See, e.g., Slaughter v. Commonwealth*, 744 S.W.2d 407, 411–12 (Ky.1987) ("The required analysis, by an appellate court, must focus on the overall fairness of the trial, and not the culpability of the prosecutor.").

5. *Id.* at 411.

as evidence, after which Torrence requested no further relief.

We have consistently held that an admonition suffices to cure these types of errors [6] and that a jury is presumed to follow an admonition.[7] We do not perceive that the Commonwealth's passing reference to Torrence's felon status was so manifestly prejudicial as to overcome the strong presumption that the jury obeyed the trial court's admonition.[8] This conclusion is reinforced by the fact that Torrence requested no further relief after the trial court admonished the jury. As we previously stated, "failure to move for a mistrial following an objection and an admonition from the court indicates that satisfactory relief was granted."[9] Accordingly, having considered the lone comment in question in context of the entire trial, we conclude that the Commonwealth's reference to Torrence as being a felon was, at most, a harmless error.[10]

### B. No Error in the Admission of Evidence Regarding Torrence's HIV–Positive Status During the Penalty Phase.

■ In what is apparently a matter of first impression, Torrence next contends that the trial court erred by permitting the Commonwealth to refer to his HIV-positive status during the penalty phase. We disagree.

KRS 532.055(2)(a)7 permits the Commonwealth to offer during the sentencing phase evidence of "[t]he impact of the crime upon the victim, as defined in KRS 421.500, including a description of the nature and extent of any physical, psychological, or financial harm suffered by the victim...."[11] Toward that end, the Commonwealth presented evidence that K.K. had become aware of Torrence's HIV-positive status and had taken medication to prevent herself from contracting HIV. Furthermore, K.K. testified that her life

---

**6.** *Price v. Commonwealth*, 59 S.W.3d 878, 881 (Ky.2001) ("Nevertheless, it has long been the law in Kentucky that an admonition to the jury to disregard an improper argument cures the error unless it appears the argument was so prejudicial, under the circumstances of the case, that an admonition could not cure it.").

**7.** *See, e.g., Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky.2005).

**8.** *See, e.g., Graves v. Commonwealth*, 17 S.W.3d 858, 865 (Ky.2000) (noting that a witness' improper reference to a defendant as being a convicted felon was the type of error that an admonition could have "easily cured....").

**9.** *West v. Commonwealth*, 780 S.W.2d 600, 602 (Ky.1989).

**10.** Torrence has not cited any Kentucky cases that utilize a harmless beyond a reasonable doubt standard to determine if an erroneous or improper statement made by a prosecutor during his or her argument was a harmless error. Of course, the United States Supreme Court has held that "before a federal constitu-

tional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, our conclusion that the statement at issue was a harmless error would not be altered even if we applied, solely for the purposes of argument, the harmless beyond a reasonable doubt standard.

**11.** The 2008 amendments to KRS 532.055 do not appear to be germane to this case. Furthermore, though not raised by the parties, we are aware that we have struck down another subsection of KRS 532.055 as being an unconstitutional violation of the separation of powers doctrine. *Manns v. Commonwealth*, 80 S.W.3d 439, 445–46 (Ky.2002). However, neither Torrence nor the Commonwealth have questioned the constitutionality of KRS 532.055(2)(a)(7). Moreover, we have previously expressly refused *sua sponte* to consider the constitutionality of KRS 532.055(2)(a)(7). *Terry v. Commonwealth*, 153 S.W.3d 794, 805 (Ky.2005). Thus, we again decline to opine on the constitutionality of KRS 532.055(2)(a)(7).

had been negatively affected to the extent that she feared she would contract HIV; and she believed her family had begun treating her differently.

The evidence Torrence complains of is directly related to K.K.'s physical and psychological harm—harm magnified beyond that suffered by a "typical" victim due to Torrence's HIV-positive status. So we find no error in the introduction of the evidence in question. And we reject Torrence's contention, unsupported by any citation to a similar case from this or any other jurisdiction, that the prejudicial nature of the HIV evidence outweighed its probative value. We agree with Torrence that the HIV evidence may have caused the jury to take a more dim view of him, but the evidence regarding the physical and emotional trauma K.K. suffered from Torrence's HIV-positive status appears to us to be precisely the type of evidence that KRS 532.055(2)(a)7 was designed to cover. Thus, we affirm.

C. *No Reversible Error Regarding Nurse's Nosebleed Testimony.*

Finally, Torrence contends that the trial court committed reversible error when it allowed a nurse, who was involved in the collection of a sexual assault kit from K.K., to testify that she did not see K.K. bleeding from her nose; but K.K. had told her (the nurse) that she (K.K.) had had a bloody nose. We conclude that the testimony was, at most, harmless error.

The parties disagree about whether the nurse's testimony falls within the hearsay exception for statements for purposes of medical treatment or diagnosis.[12] Although the evidence, on its first examination, would appear to fall within KRE 803(4)'s hearsay exception for "past or present symptoms, pain, or sensations," even if we assume, solely for the purposes of argument, that the nurse's testimony regarding K.K.'s bloody nose was inadmissible hearsay, any error was harmless.

K.K. herself testified that Torrence repeatedly struck her in the head and caused her nose to bleed. A police officer testified that he photographed dried blood inside K.K.'s nose, took a bloody paper towel from her, and noticed what appeared to be blood on her sweater. So the nurse's testimony regarding K.K.'s bloody nose was cumulative evidence; and we, again, reiterate that the erroneous admission of cumulative evidence is a harmless error.[13] The fact that the nurse testified before the police officer and K.K. testified does not alter our conclusion because it is inconceivable that K.K. would not have testified about the events leading up to and surrounding the rape and that the police officer would not have described his encounter with K.K., regardless of whether the nurse testified about K.K.'s bloody nose. In other words, Torrence's argument that the erroneous admission of the nurse's testimony about K.K.'s nosebleed affected the testimony of other witnesses for the Commonwealth is illogical speculation. We affirm, finding any error to be harmless beyond a reasonable doubt.[14]

---

12. *See* KRE 803(4).

13. *See, e.g., Wells v. Commonwealth,* 206 S.W.3d 332, 335–36 (Ky.2006) (Minton, J., concurring, joined by three other justices, stating that the erroneous admission of cumulative evidence is harmless error) (*citing Meadows v. Commonwealth,* 178 S.W.3d 527, 538 (Ky.App.2005); *Combs v. Commonwealth,* 965 S.W.2d 161, 165 (Ky.1998)).

14. *Holt v. Commonwealth,* 219 S.W.3d 731, 738 (Ky.2007) (using harmless beyond a reasonable doubt standard when attorney violated, *inter alia,* the prohibition against hearsay evidence set forth in KRE 802); *Soto v. Commonwealth,* 139 S.W.3d 827, 862 (Ky.2004) (utilizing harmless beyond a reasonable doubt standard in regards to improperly admitted hearsay).

## III. *CONCLUSION.*

For the foregoing reasons, we affirm the circuit court's judgment.

All sitting. All concur.